## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **FILLSHAPE S.R.L.; FILLSHAPE/IMA S.P.A**, |  |
| Plaintiffs, |  |
| v. | Civil No. 16-1216 (ADC/BJM) |
| **INDAG GMBH & CO. BETRIEBS KG; WILD PARMA S.R.L.,** |  |
| Defendants. |  |

## <u>REPORT AND RECOMMENDATION</u>

FillShape S.r.L. and IMA S.p.A. (collectively "IMA") sued Indag GmbH & Co. Betriebs KG and Wild Parma S.r.L. (collectively "Indag") for a declaratory judgment of non-infringement of patents and no misappropriation of trade secrets under the Industrial and Trade Secret Protection Act of Puerto Rico, 10 L.P.R.A. § 4131 *et seq*. Docket No. 1. Indag previously filed a complaint in the Northern District of Illinois charging IMA with patent infringement and misappropriation of trade secrets. Indag transferred its case to this district (Puerto Rico) following IMA's complaint, and the two cases were consolidated (Case No. 16-1354 and Case No. 16-1216). Docket No. 18 and 19. IMA now moves to dismiss both parties' trade secret misappropriation claims (but not the patent claims) under the doctrine of *forum non conveniens*, arguing that Italy is the superior forum. Docket No. 53. Indag opposes. Docket No. 56. Pursuant to Local Rule 72(b)(1), all dispositive pre-trial motions were referred to me for a report and recommendation. Docket No. 83.

For the reasons that follow, IMA's motion should be **GRANTED.**

## BACKGROUND

The following facts are extracted from both parties' submissions, limited to those facts relevant to the matter before the court.

Indag is a German corporation, and Wild Parma is its Italian subsidiary. Docket No. 56 at 2. They are engaged in the business of developing and selling pouch making and filling machinery. *Id*. FillShape and IMA are both Italian corporations with subsidiaries in the United States. Docket

No. 53 at 3; Docket No. 56 at 2–3. Three years ago, Filippo Furlotti left the employment of Wild Parma and went to work for FillShape. Docket No. 56 at 3; Docket No. 53 at 3. Indag alleges that Furlotti stole its trade secrets and used them to help FillShape develop a competing drink pouch filling machine. Second Amended Complaint, *Indag GmbH & Co. Betriebs KG et. al. v. IMA S.p.A et. al.*, No. 3:16-CV-01354 (ADC) (D.P.D. Apr. 16, 2016), Docket No. 79 at 6–9. These and subsequent events, all of which occurred in Italy, spawned three ongoing Italian criminal investigations. Docket No. 53 at 6. Indag also alleges that FillShape's new drink pouch filling machine infringes Indag's pre-existing U.S. patent. Second Amended Complaint, *Indag v. IMA*, No. 3:16-CV-01354 (ADC), Docket No. 79 at 12.

FillShape attended a trade show in Chicago to promote its new machine, and in July 2014 tried to sell it to a Puerto Rico-based company. Docket No. 56 at 3. The attempted sale generated one visit by a representative of the Puerto Rico company to Italy as well as at least two visits from FillShape's representatives to Puerto Rico. *Id*. at 3–4.

In June 2015, Indag filed a complaint against IMA for patent infringement and misappropriation of trade secrets in the Northern District of Illinois, which the court dismissed without prejudice for lack of personal jurisdiction. On February 2, 2016, Indag re-filed its complaint against IMA in the same district. Days later, IMA filed the present case in the District of Puerto Rico against Indag seeking a declaratory judgement of non-infringement of Indag's patent and of no misappropriation of Indag's trade secrets. Docket No. 1. Indag then moved its claim from Illinois to Puerto Rico. Docket No. 18. And, twelve days after IMA filed its claim in Puerto Rico, it filed a substantially similar claim in Italy. Docket No. 53 at 5. In the interim, the Italian case has progressed. *Id*. at 6.

## DISCUSSION

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 507 (1947). As a discretionary judicial tool, the *forum non*

*conveniens* doctrine is employed to avoid the serious unfairness of hearing trial in a forum so inconvenient to the defendants. *Adelson* v. *Hananel*, 510 F.3d 43, 52 (1st Cir. 2007).

"[T]he party moving for dismissal bears the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency *strongly* favor litigating the claim in the second forum.'" *Adelson*, 510 F.3d at 52 (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)). As such, the "plaintiff's choice of a forum will be disturbed only rarely." *Nowak* v. *Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) (citations omitted). "When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is then 'less reasonable.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (quoting *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 255–56 (1981)).

To satisfy their burden of proof, the moving party must first prove "the availability of an adequate alternative forum." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir. 1992). A forum is adequate if the defendants are "amenable to process" there and if the proposed forum offers a satisfactory remedy. *Id.* at 1349–50.

Having established that an adequate alternative forum is available, the moving party must then prove that "the alternative forum is sufficiently more convenient for the parties as to make transfer necessary to avoid serious unfairness." *Id.* at 1354. The court must evaluate the motion using the "well-established 'public interest' and 'private interest' criteria." *Id*. The non-exclusive private interest criteria provided by the Supreme Court in *Gulf Oil* "include the comparative convenience of the parties' access to sources of proof; the availability of compulsory process and the cost of securing the attendance of witnesses; the possibility of a view of the premises, if a view would be appropriate; and an evaluation of 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil*, 330 U.S. at 508). Moreover, "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant through unnecessary cost or trouble." *Gulf Oil*, 330 U.S. at 508. The non-exclusive public factors include "administrative difficulties of docket congestion; the general goal of 'having localized

FillShape S.r.L., et. al v. Indag GmbH & Co. Betriebs KG, et. al., Civil No. 16-1216 (ADC/BJM)        4

controversies decided at home,' and . . . ease of access to the proceedings on the part of interested citizens, the trier's relative familiarity with the appropriate rules of decision, and the burdens of jury duty." *Iragorri*, 203 F.3d at 12 (quoting *Gulf Oil*, 330 U.S. at 508–09).

Since the moving party has the burden of proving the elements of *forum non conveniens*, the court need only analyze the "factors alleged to justify dismissal." *Nowak*, 94 F.3d at 720.

Turning to the merits, I'll first note the oddity of having a plaintiff, who chose the forum, seek dismissal under the doctrine of *forum non conveniens*. Neither party cites a case addressing this situation,[1] which appears to be a matter of first impression in this circuit. The Seventh Circuit, though, has hypothesized that it is permissible. *See Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 881–82 (7th Cir. 2004) ("[Salton] should file in the district court a motion to dismiss the case on the ground of *forum non conveniens*. We said earlier that it could do this even though it is the plaintiff."). And, in the analogous context of a motion to transfer under § 1404(a), courts have made clear that a plaintiff, as well as a defendant, may move to change venues. *See Smith v. ABN AMRO Mortg. Group Inc.*, 434 Fed. App'x. 454, 465 (6th Cir. 2011) ("[T]he right to a transfer under [28 U.S.C. § 1404(a)] is available to a plaintiff." (quoting *Philip Carey Manufacturing Co. v. Taylor,* 286 F.2d 782, 784 (6th Cir. 1961))); *Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F. Supp. 1114, 1118–19 (S.D.N.Y. 1969) (listing cases).

The novel posture of this motion bedevils the assignment of the burden of proof, which typically falls on the defendant and favors the plaintiff's choice of forum.  *See Adelson*, 510 F.3d at 52. Here, the typically complimenting principles of deferring to the plaintiff and requiring the moving party to shoulder the burden of proof cancel each other out since IMA occupies both roles. The burden of proof is further complicated by the fact that IMA is both a plaintiff and a defendant, as it seeks to dismiss both its own claim as well as Indag's claim. Docket No. 53 at 15.

---

[1] Indag cites to *Sparta Florida Music Grp., Ltd.* v. *Chrysalis Records, Inc,*, 522 F. Supp 44 (S.D.N.Y. 1982), but that court did not complete a *forum non conveniens* analysis.

IMA addresses this conflict of purpose by arguing that Indag is in fact the "original plaintiff[] to these actions" because Indag was the first party in the case to file in the United States (by filing a complaint in the Northern District of Illinois in June 2015). Docket No. 59 at 2. IMA argues that Indag's choice of forum of the United States then dictated that IMA file its own complaint in Puerto Rico; based on this analysis, IMA should not be considered the plaintiff in this action nor should the court find that IMA chose Puerto Rico as a convenient venue. *Id*. Because Indag filed a claim against IMA in the United States, it is true that IMA was put in the position of having to defend a trade secrets action in the United States as opposed to Italy. *Id*. Although it then chose to bring essentially a counter-suit in Puerto Rico, IMA persuasively argues that this evidences a preference for Puerto Rico over Illinois, not Puerto Rico over Italy. Accordingly, the court recognizes that although IMA, as the plaintiff, chose Puerto Rico as its original venue, its choice did not reflect a preference for Puerto Rico over Italy as a venue for its suit. However, the court is left to wonder why IMA chose to file this case in Puerto Rico as opposed to responding to Indag's suit in Illinois with a motion to dismiss on *forum non conveniens* grounds as a court does not need personal jurisdiction over the parties to decide a *forum non conveniens* motion. *Sinochem*, 549 U.S. at 432 ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

Although as plaintiff, IMA's initial choice of forum—Puerto Rico—would be afforded great weight, its subsequent choices of fora do not merit the same consideration. In the most analogous situation—a plaintiff's motion to transfer under 1404(a)—courts have found that while "[i]t is one thing to give great weight to plaintiff's initial choice of forum . . . it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice." *Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc.*, No. 301CV2282-L, 2003 WL 298799, at *4 (N.D. Tex. Feb. 10, 2003) (quoting *FPC Corp. v. Uniplast, Inc.*, 994 F. Supp. 945, 946 (N.D. Ill. 1998)). As one court explained, giving substantial deference to a plaintiff's second or third choice of forum could change a motion to transfer venue into "an unchecked tool for the plaintiff to shop

among forums and between judges." *Leiker v. Jarvis Products Corp.,* 1990 WL 112974 at *2 (D. Kan. Jul. 10, 1990). IMA's second choice of forum—Italy—should not receive the deference that its first choice of Puerto Rico warrants.

However, either way, IMA is also a defendant to Indag's counterclaims, and thus Indag's choice of forum of Puerto Rico does merit deference that should only be overcome under "exceptional circumstances." *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 566 (D.P.R. 1996). Nonetheless, the deference owed to Indag's choice is significantly less than what would be afforded to a domestic plaintiff's choice of venue. *Compare Sinochem*, 549 U.S. at 423 ("[B]ias towards plaintiff's choice of forum is much less pronounced when the plaintiff is not an American citizen or resident." (internal quotes and citations omitted), *with Adelson*, 510 F.3d at 53 (emphasizing the "heightened deference" that should be afforded to "a plaintiff's choice of *home* forum" as when a plaintiff is a U.S. citizen seeking to litigate in the United States (citations omitted)). In the end, Indag's preference for a Puerto Rico forum is entitled to at least some deference, which IMA has the burden to overcome.

Moving on, the court must next determine whether an available and adequate alternative forum exists. Here, Italy, the proposed forum, is both available and adequate. It is available because both sides include parties that are Italian corporations with their principal places of business in Italy. Docket No. 53 at 7. It is clearly adequate as both sides are currently litigating a substantially similar case there, and, as IMA explains, "numerous other courts have found that Italy provides an adequate forum for bringing . . . trade secret misappropriation claims." *Id*. at 8; *see, e.g.*, *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288 (3d Cir. 2010); *King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009); *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1 (5th Cir. 2004). Furthermore, Indag does not dispute that Italy is an available and adequate forum for the purposes of a *forum non conveniens* inquiry. Docket No. 56. Thus, the analysis turns to balancing the public and private factors.

The private factors IMA identifies as supporting dismissal are "(1) the relative ease of access to the sources of proof; (2) the location of the witnesses and the availability of compulsory

process for the attendance of these witnesses; (3) the cost of obtaining the attendance of the witnesses; and (4) all the other practical problems that are part of a jury trial." Docket No. 53 at 5.

IMA first emphasizes that the machine in question was developed in Italy and remains in Italy; it has never been brought to Puerto Rico, or the United States. Docket No. 53 at 1–3; 10–11. The events relevant to the trade secret misappropriation claim also occurred in Italy, and all the relevant documents and witnesses are located there. *Id*. at 5–6. Circuit precedent dictates that when the "[e]vidence of the breach" as well as "major witnesses" are all in a foreign country, this "'weighs heavily' in favor of declining jurisdiction on *forum non conveniens* grounds." *Howe* v. *Goldcorp Investments*, Ltd., 946 F.2d 944, 952 (1st Cir. 1991) (quoting *Farmanfarmanian v. Gulf Oil Corp.*, 588 F. 2d 880, 881 (2d. Cir. 1978)). However, other courts have refused to dismiss a claim on *forum non conveniens* grounds when the parties' other claims, which require the same counsel, same witnesses, and same evidence, remain in front of the court. *In re Maritima Aragua, S.A.*, 823 F. Supp. 143, 147 (S.D.N.Y. 1993); *Itel Container Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd.*, 688 F. Supp. 438, 441 (S.D.N.Y. 1988).

Here, IMA concedes that there is some overlap between the witnesses needed for both claims (patent infringement and trade secret misappropriation) but argues that many witnesses as well as the evidence required for each claim are entirely different. Docket No. 59 at 5–6. Conversely, Indag argues that the causes of action "will require much of the same discovery, documents, witnesses and other resources." Docket 56 at 11. To support its argument, IMA presented specific examples of witnesses and evidence that will only be needed for the trade secret claim—including "documents related to [] Furlotti's employment, the incorporation of FillShape, documents depicting and/or related to [Indag]'s alleged trade secrets, former Wild Parma employees, third party vendors and contractors"—while Indag provides no specific documents or witnesses that will overlap between the two claims. Docket No. 59 at 2. Indag rightly points out that IMA has not identified any witnesses specific to the trade secret claims who are unwilling or unable to come to Puerto Rico, but the cost and inconvenience even for willing witnesses is still significant. *Id*. at 7. Therefore, although both sides concede that there is some overlap between the

two claims, the evidence before the court supports the presumption that there will be a number of Italian documents and witnesses that are unique to the trade secret claims.

The third factor that IMA argues supports dismissal is the impracticality of translating documents from Italian to English and providing interpreters for Italian witnesses. Docket No. 53 at 10. There is case law that supports this view: "While the cost of transporting these records to counsel and a court in New Hampshire may not be overly burdensome, translating the records and testimony, and resolving any disagreements as to the translations, could prove costly, time consuming and inefficient to both the parties and the court." *Philipps*, 555 F. Supp. 2d at 271; *see also U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008) (dismissing a case on the basis that "[d]ragging all those witnesses and documents from Japan to Chicago, supplying interpreters for the witnesses and translators for the documents, and conducting a trial largely on the basis of testimony given through interpreters and of documents translated from their original language, would impose unreasonable burdens"). Indag argues that the fact that the witnesses live in Germany and Italy does not necessarily mean they do not speak English. Docket No. 56 at 9. Unfortunately, IMA did not provide the court with specific witnesses who do not speak English or types of documents that are written in Italian, but common sense suggests that many of the witnesses would be more comfortable testifying in Italian and that many of the documents are likely in Italian as well. This factor is slightly mitigated by the fact that some of the translation will be occurring anyway for the patent infringement claims, but, as discussed above, there will be witnesses and documents that do not overlap. Overall, the private factors cited by IMA somewhat favor dismissal but are not by themselves dispositive.

IMA also relies heavily on the fact that there is concurrent litigation in Italy between the parties. Docket No. 53 at 1, 5–6; Docket No. 59 at 3–4. But, in *Adelson*, the First Circuit faulted the district court's reliance on concurrent litigation in Israel as a reason to dismiss on *forum non conveniens* grounds, finding "[t]he existence of concurrent litigation is not a relevant factor to the analysis." 510 F.3d at 54. The court's phrasing is somewhat ambiguous as to whether "the analysis" refers to just the public interest factors or to the *forum non conveniens* analysis as a whole, but

subsequent decisions have made clear that the First Circuit was referring to the latter: "Although the presence of concurrent litigation may be relevant to demonstrate the availability of an alternative adequate forum, it is not properly considered when balancing the factors of convenience." *Jofran Sales, Inc. v. Watkins & Shepard Trucking, Inc.*, 216 F. Supp. 3d 206, 214 (D. Mass. 2016) (citing *Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167, 170 (D. Me. 2009)); *see also Neelon v. Krueger*, 63 F. Supp. 3d 165, 171–72 (D. Mass. 2014) ("*Adelson* stands for the rule that concurrent litigation does not affect the court's *forum non conveniens* inquiry."). Courts in other circuits have also determined that *Adelson* prohibits the consideration of concurrent litigation outside of the adequate and available forum factor. *See Jofran Sales, Inc.*, 216 F. Supp. 3d at 214 n. 3 (listing cases). Accordingly, the court should not consider the fact that there is pending litigation on the same claims in Italy, other than as proof of an adequate alternative forum.

Turning to the public factors, IMA identifies the following as favoring dismissal: "(1) the local interest in having localized disputes decided at home; (2) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (3) the unfairness of burdening citizens in an unrelated forum with jury duty." Docket No. 53 at 8. In its opposition brief, Indag also addresses the public factor of judicial economy and administrative convenience (i.e., docket congestion). Docket No. 56 at 10.

Both Italy and Puerto Rico have a local interest in having this case decided. Italy has an interest because the claims are "grounded" in events that took place there. *Banco Mercantil, S.A.*, 927 F. Supp. at 569. As IMA explains, this really is an Italian controversy as the case involves "Italian companies and citizens regarding harms suffered in Italy": the alleged misappropriation of the trade secrets by an Italian citizen occurred in Italy; the alleged use of the trade secrets by an Italian company occurred in Italy; the incorporation and registration of FillShape, an Italian company, occurred in Italy; and the alleged use of the trade secrets was discovered through the filing of an Italian patent. Docket No. 59 at 1; Docket No. 53 at 3. IMA's defenses are also rooted in Italian events and evidence. Docket No. 53 at 3. Puerto Rico does have some interest in the case

because IMA offered to sell the machine in question to Puerto Rico residents, but it pales in comparison to Italy's. This factor weighs heavily in favor of dismissal.

IMA also argues that the second factor weighs in favor of dismissal because Italian law will apply to the trade secret claim. Courts have found the necessity of applying foreign law is a "factor[] 'counseling dismissal'" on *forum non conveniens* grounds. *See Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 428 (1st Cir. 1991) (citations omitted). Here, IMA suggests that because the events that form the basis of the trade secret claim took place in Italy, the case will be decided under Italian law as Puerto Rico follows the Restatement (Second) of Conflict of Laws' "'dominant or significant contacts test,' in which the laws of the jurisdiction with the most significant contacts to the dispute apply." *Linares-Acevedo v. Acevedo*, 38 F. Supp. 3d 222, 227 (D.P.R. 2014); *see New Ponce Shopping Ctr., S.E. v. Integrand Assur. Co.*, 86 F.3d 265, 267 (1st Cir. 1996) ("Under [Puerto Rico's dominant or significant contacts test] the laws of the jurisdiction with the most significant contacts to the disputed issues will apply.").

Indag counters that this is the first time that IMA has suggested that foreign law will apply to the claims, noting that in the complaint FillShape based its trade secret claim on Puerto Rico law. Docket No. 56 at 11–12.

It is well-established that a party need not raise an issue of foreign law in their pleading. Fed. R. Civ. P. 44.1. Instead, a party must raise the issue either in a pleading or other writing such that the other party has reasonable notice and is not unfairly surprised. *See Bristol-Myers Squibb Company v. Matrix Laboratories Limited*, 655 Fed. App'x. 9 (2d Cir. 2016) ("Rule 44.1 does not impose any definite time limit and only requires notice to avoid unfair surprise."); *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515 (D. Md. 2014); *Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 302 (D. Mass. 2011). Here, IMA has provided sufficient notice of the potential application of Italian law, even though it was not cited in the complaint.

Indag's argument that IMA's complaint acts as a judicial admission is also unpersuasive. A party is bound to the factual allegations in its complaint, and courts may consider those facts to be judicially admitted. "Ordinarily, a pleading admitting a fact alleged in an antecedent pleading

is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation." *Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010) (citations omitted). However, a statement of legal theory, such as IMA's statement that its cause of action arises under the Industrial and Trade Secret Protection Act of Puerto Rico, is a legal conclusion that is not binding. *See id.; Comm'l Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007) ("[L]egal conclusions are rarely considered to be binding judicial admissions"); *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 377 (3d Cir. 2007) (judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories").

Given that a choice-of-law determination is a "fact-intensive inquir[y]," it is likely premature to resolve it at the motion to dismiss stage. *Bristol-Myers*, 655 F. App'x at 13. Nevertheless, it appears likely that Italian law will apply to the trade secret claims because the jurisdiction with the "most significant contacts" is Italy. *See Linares-Acevedo*, 38 F. Supp. 3d at 227. As discussed above, the events that led up to this trade secret claim, including the alleged misappropriation of trade secrets from an Italian facility, the development of the machine, and the employment of Furlotti by Wild Parma and FillShape, all occurred in Italy. Docket 53 at 10. As three of the four parties are Italian corporations, they also have the most significant contact with Italy. Docket No. 56 at 2; Docket No. 53 at 3. Moreover, it is possible that the pending Italian criminal investigations will become criminal cases that would bleed into this litigation; those cases would also be based on Italian law. Docket No. 53 at 6. The application of Italian law, though not dispositive, weighs strongly in favor of dismissal as an Italian court "would be far better able to apply its own law than any United States court would be." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 871 (7th Cir.), *cert. denied sub nom. Fischer v. Magyar Ilamvasutak ZRT*, 135 S. Ct. 2817 (2015) (citations omitted); *Abad v. Bayer Corp.*, 563 F.3d 663, 670 (7th Cir. 2009) (granting dismissal on *forum non conveniens* grounds as Argentinean courts have "superior competence" in the law of their country); *Smith v. Chason*, No. CIV. A. 96-10788-PBS, 1997 WL 298254, at *11 (D. Mass. Apr. 10, 1997).

The third public factor is the burden on Puerto Rico residents of being called to jury duty. Puerto Rico jurors would not be unfairly burdened by these claims because Puerto Rico is not an unrelated forum: the trade secret claim is related to a machine that one party attempted to sell here. And, more importantly, the weight of this factor is neutralized by the fact that a Puerto Rico jury will already be hearing the parties' patent infringement claims.

Similarly, the last public factor, judicial economy and administrative efficiency, does not point towards dismissal. As Indag argues, the dismissal of the trade secret claims does not significantly affect the court's docket because IMA is only seeking to dismiss one of the two claims pending in front of this court.

In addition to considering the non-exclusive private and public factors, both parties urge the court to consider any "changed circumstances" in its analysis. Here, the framework for a plaintiff's motion to transfer venue under § 1404(a) again is a helpful guide given the unusual posture of IMA's request. In a § 1404(a) analysis, a plaintiff seeking to "alter her own choice of forum" must prove not only that the transferee forum is more convenient and efficient but also that there are "changed circumstances" from when the case was initially filed that warrant transfer unless this added requirement would "severe[ly] prejudice" the plaintiff, such as when a failure to transfer would lead to dismissal of the case. *Weckstein v. Mayar Silk, Inc.*, No. 87-CIV-4962 (RWS), 1988 WL 36327, at *1 (S.D.N.Y. Apr. 14, 1988); *see Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 784 (6th Cir. 1961) (a plaintiff may seek to transfer a case "if he later discovers that there are good reasons for transfer"). Such a requirement enforces the doctrine of *forum non conveniens*' goal to prevent vexatious and oppressive litigation by requiring plaintiffs to justify their change of heart.

Here, IMA argues that circumstances have changed because twelve days after filing its motion for declaratory judgment in this district, IMA filed a similar claim in Italy. The subsequent progress of the Italian case, including Indag's filing a response and counterclaims, are allegedly changed circumstances that warrant dismissal. However, all of the changes IMA points to were known to it at the time it chose Puerto Rico as a convenient forum—the criminal investigations

had already begun, and IMA very likely knew that it would be filing a complaint in Italy at least twelve days before it did so. *See United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 623 (S.D.N.Y. 2016) ("Circumstances that were 'known or should have been known to plaintiff long before the lawsuit' accordingly will not support a plaintiff's motion to transfer." (citations omitted)). Although IMA argues that these cases have progressed, their progression can be easily differentiated from other cases where the court found changed circumstances. *See Weckstein*, 1988 WL 36327, at *1 (plaintiff ended up needing further medical care in another state); *Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. 1986) (dismissal of some defendants allowed venue in another state); *Harry Rich Corp. v. Curtiss-Wright Corp.,* 308 F. Supp. 1114, 1118–19 (S.D.N.Y.1969) (intervening state court decision allowed plaintiffs to bring defendants to that court); *Moto Photo, Inc.*, 2003 WL 298799, at *3 (plaintiff's intervening bankruptcy).

Furthermore, *Adelson* dictates that the court ignore concurrent litigation in its analysis outside of determining whether an available alternative forum exists. 510 F.3d at 54 ("The existence of concurrent litigation is not a relevant factor to the analysis."). Considering the progress of the concurrent Italian litigation as a changed circumstance would contravene *Adelson's* prohibition. Because IMA can point to no other changes besides concurrent litigation, it cannot show that changed circumstances weighs in favor of dismissal.

Finally, Indag argues that IMA dragged its feet in moving to dismiss. Docket No. 56 at 4 (IMA brought their motion to dismiss "roughly eleven months after initiating litigation in this forum, without explanation for the delay."); *see id*. at 9–10. There is no time limit on filing a motion to dismiss for *forum non conveniens*. *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173–74 (10th Cir. 2009). However, some courts require that the party "proffer a motion to dismiss for *forum non conveniens* within a reasonable time after the party knows or could have reasonably known facts or circumstances serving as the basis for such a motion." *Id*; *see Genpharm Inc. v. Pliva-lachema a.s.*, 361 F. Supp. 2d 49, 59 (E.D.N.Y. 2005) ("[T]he defendant's delay in bringing a *forum non conveniens* motion is a factor to be considered in the Court's evaluation of whether the forum was

convenient." (citations omitted)). In its opposition, Indag homed in on the fact that IMA waited almost a year after filing its claim to bring this motion to dismiss. Docket No. 56 at 5. Courts have found that the moving party did not file within a reasonable time when the motion was made one month before starting trial, when the case had already been tried to conclusion, and when "discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003); *McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 423 (5th Cir. 2001); *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir. 1991).

Here, IMA knew about the circumstances underlying its motion to dismiss for the full ten months between the filing of its complaint and the filing of its motion. However, discovery had not yet begun when IMA filed its motion. Docket No. 65. IMA's delay has not caused significant prejudice to the plaintiff or to the court. Therefore, the delay is not dispositive.

## CONCLUSION

IMA has the burden to prove that its motion to dismiss on *forum non conveniens* grounds should be granted. To this end, IMA established that Italy is an available and adequate alternative forum. The private factors weigh somewhat in favor of dismissal because the inconvenience and costs that IMA points to are only partially mitigated by the fact that the patent infringement case will remain in Puerto Rico. The public factors weigh strongly in favor of dismissal as this is an Italian controversy, and Italian law likely will predominate as to the trade secret claims. IMA has met its heavy burden to prove that Italy is a superior forum, especially because the deference to Indag's choice of forum for its counterclaim is less than it would be for a U.S. resident. Even though this motion comes to the court in an unusual posture, at the end of the day, the interests of the parties and the court are better served by dismissing the trade secret misappropriation claims in favor of an Italian forum. The motion should be **GRANTED.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific

FillShape S.r.L., et. al v. Indag GmbH & Co. Betriebs KG, et. al., Civil No. 16-1216 (ADC/BJM)          15

objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 23rd day of August, 2017.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge